IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**MARIA DAWN FIERRO,**
       **Plaintiff,**

v.                                         **CIVIL ACTION NO. 2:15-cv-08388**

**CAROLYN. W. COLVIN,**
**Acting Commissioner of Social Security,**
       **Defendant.**

## **PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. Presently pending before this Court are Plaintiff's Memorandum in Support of Judgment on the Pleadings (ECF No. 10), Brief in Support of Defendant's Decision (ECF No. 13) and Plaintiff's Reply to Brief in Support of Defendant's Decision (ECF No. 14).

Claimant Maria Dawn Fierro, filed applications for DIB and SSI on March 13, 2012. Claimant alleged disability beginning July 1, 2009. These claims were denied initially on July 6, 2012, and upon reconsideration on August 20, 2012. Thereafter, Claimant filed a written request for hearing on August 31, 2012. By decision dated January 24, 2014, the ALJ determined that Claimant was not entitled to benefits. On March 24, 2014, Claimant sought review by the Appeals Council of the ALJ's unfavorable decision. In a notice dated April 29, 2015, the Appeals Council (AC) denied Claimant's request for review. The ALJ's decision became the final decision of the Commissioner. Thereafter, Claimant filed the present action seeking judicial review of the

administrative decision pursuant to 42 U.S.C. § 405(g), and requesting remand and reversal of the ALJ's adverse decision.

## Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2015). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2015). The

Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration must follow a special technique at every level in the administrative review process. 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2)   We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3)   We have identified four broad functional areas in

which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of none or mild in the first three functional areas (activities of daily living, social functioning, and concentration, persistence, or pace) and none in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. "404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA will determine if the severe impairment(s) meet or are equal to a listed mental disorder.. The SSA does so by comparing "the medical findings about [the] severe impairment(s) and the rating of the degree of the

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

functional limitation to the criteria of the appropriate listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date of February 25, 2012, and meets the insured status requirements of the Social Security Act through September 30, 2014 (Tr. at 14). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairment of obesity, back impairment, hearing loss on left side, migraine headaches, cervical stenosis, osteophytes of the mid thoracic spine, depression and generalized anxiety disorder. (*Id.*) At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1 (Tr. at 15). The ALJ then found that Claimant has a residual functional capacity to perform a full

range of work at the light exertional level[2] (Tr. at 17). The ALJ held that Claimant could perform unskilled work in the national economy in jobs such as: counter worker, product sorter, assembler, security monitor, hand assembler and receptionist (Tr. at 23). On this basis, benefits were denied (Tr. at 24).

## Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is not supported by substantial evidence.

---

[2] Claimant can occasionally climb, balance, stoop, kneel, crouch and crawl. She should avoid concentrated exposure to temperature extremes, noise, vibrations and hazards. She can also perform only routine, repetitive tasks (Tr. at 17).

### Claimant's Background

Claimant was born on May 17, 1975 (Tr. at 34). She finished the ninth grade and is able to read and write. (*Id.*) On the date of the hearing, Claimant stood at 5 foot 5 inches and weighed 200 pounds (Tr. at 35). Claimant lives wither her son, who was 13 years old on the date of the hearing. Claimant testified that she is engaged. (*Id.*) She has not held a driver's license for approximately 11 years due to nonpayment of bad checks (Tr. at 36).

### Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Administrative Law Judge (ALJ) erred in failing to account for Claimant's moderate difficulties in concentration, persistence or pace, which the ALJ found to exist (ECF No. 10). Claimant argues that the ALJ failed to provide an adequate explanation for his residual functional capacity (RFC) finding and the ALJ's credibility determination is not supported by substantial evidence. (*Id.*) Defendant asserts that the ALJ fully accounted for Claimant's mild depression and generalized anxiety disorder by limiting her to unskilled work (ECF No. 13). Defendant avers that the ALJ did not err by not classifying irritable bowel syndrome as an impairment. Also, Defendant asserts that the ALJ's credibility determination is supported by substantial evidence. (*Id.*)

### Medical Record

The Court has reviewed all evidence of record, including the medical evidence of record, and will discuss it further below as necessary.

### Discussion

Claimant asserts that the ALJ erred in step-three of the sequential evaluation by failing to account sufficiently for her moderate difficulties in concentration, persistence, and pace (ECF No. 10). Specifically, Claimant asserts that the ALJ included only one limitation he

attributed to Claimant's moderate limitations in the ability to maintain concentration, persistence or pace, and that was a limitation to perform "only routine, repetitive tasks" (Tr. at 17). Claimant argues the following:

> The limitation included in the ALJ's RFC was not sufficient to accommodate a moderate difficulty in maintaining concentration, persistence or pace, which the ALJ found to exist. Work that involves understanding and carrying out simple instructions and no detailed or complex instructions still requires a worker to focus and stay on task, something that an individual with [Claimant's] acknowledged limitations in concentration, persistence or pace would not be able to satisfy. The recent Fourth Circuit Court holding in *Mascio* v. Colvin, 780 F.3d 632 (4th Cir. 2015), applies to the facts of this case. The *Mascio* court agreed with other circuits in holding that "an ALJ does not account 'for a claimant's limitations in concentration, persistence and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.' Id. At 638, quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) and noting that the Third, Seventh and Eighth Circuits agree.
>
> Herein, the VE testified that an individual limited to light work who could occasionally perform postural activities, must avoid concentrated exposure to extreme temperatures, noise, vibrations, and hazards, and could only perform routine, repetitive tasks could perform unskilled jobs as a counter worker (DOT No. 249.366-020), a products sorter (DOT No. 753.587-010), and an assembler (DOT No. 706.687-010) – all of which require an individual to maintain concentration, keep a pace, or meet a quota (Tr. 62-63). In *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir 2010), the Court found that "because the controlling hypothetical inadequately described Ealy's limitations, the expert's conclusion that Ealy could [do other work] does not serve as substantial evidence that Ealy could perform this work." *Id*., at 517, comparing *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 931 (E.D. Mich. 2005) (insufficiency of hypothetical posed by ALJ evidenced by fact that jobs the vocational expert recommended – assembler, packer, sorter, and security guard – generally require a sustained degree of concentration, persistence, and pace).
>
> The ALJ's failure to include all of the limitations that arose from [Claimant's] acknowledged impairments in his controlling hypothetical question to the VE elicited unreliable testimony from the VE. An ALJ may rely upon a VE's answer to a hypothetical question only if substantial evidence supports the assumptions

> included in the hypothetical question. *Walker v. Bowen*, 889 F.2d 47, 50-51 (4th Cir. 1989). Therefore, the ALJ's conclusion at step five of the sequential evaluation that [Claimant] could perform work that existed in significant numbers in the national economy was not supported by substantial evidence of record. (ECF No. 10).

<u>Residual Functional Capacity</u>

A RFC represents the most that an individual can do despite his or her limitations or restrictions. *See* Social Security Ruling 96-8p, 1996 WL 374184, *1 (July 2, 1996). Pursuant to SSR 96-8p, the RFC assessment must be based on all of the relevant evidence in the case record, including the effects of treatment and the limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication. *Id.* at *5. The Ruling requires that the ALJ conduct a "function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3. This function-by-function analysis enables the ALJ to determine whether a claimant is capable of performing past relevant work, the appropriate exertional level for the claimant, and whether the claimant is "capable of doing the full range of work contemplated by the exertional level." *Id.*

Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. § 404.1545(a) (2015). This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s). *Id.* In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

In determining a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. The ALJ also must "explain how any material inconsistencies or ambiguities, in the evidence in the case record were considered and resolved." *Id.*

In *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015), the Fourth Circuit observed that SSR 96-8p "explains how adjudicators should assess residual functional capacity. The Ruling instructs that the residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." It is only after the function-by-function analysis has been completed that RFC may "be expressed in terms of the exertional levels of work." *Id.* The Court noted that the ruling must include a narrative as to how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. *Id.* The Fourth Circuit further noted that a *per se* rule requiring function-by-function analysis was inappropriate "given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested." *Id.* Rather, the Fourth Circuit adopted the Second Circuit's approach that "remand may be appropriate...where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (c*iting Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)); *see also*, *Ashby v. Colvin*, Civil Action No. 2:14-674 (S.D. W.Va. Mar. 31, 2015).

Defendant asserts that the ALJ's finding of moderate difficulties in concentration, persistence or pace is under to paragraph B of Listings12.00A and is not a residual functional

10

capacity assessment. However, the holding in *Mascio* states that "an ALJ does not account for a claimant's limitations in in concentration, persistence, and pace by restricting the hypothetical question to ***simple, routine tasks*** or unskilled work.'" *Mascio*, 780 F.3d at 638 (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (emphasis added). Moreover, as the *Mascio* court articulated, "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.*

In the present matter, the ALJ failed to include all Claimant's impairments in his hypothetical question to the Vocational Expert. The ALJ's hypothetical question to the VE included a person who could "perform only routine, repetitive tasks" which as discussed *supra*, is insufficient to account for Claimant's limitations in concentration, persistence and pace pursuant to *Mascio* (Tr. at 62). As a result, substantial evidence does not support the assumptions included in the hypothetical question. Therefore, the undersigned respectfully recommends that the District Judge find that the ALJ's determination at step-five[3] of the sequential evaluation is not supported by substantial evidence of record because the ALJ's determination was based, in part, on the VE's testimony. This Court makes no recommendation as to Claimant's remaining arguments. These issues may be addressed on remand.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Plaintiff's Brief in Support of Motion for Judgment on the Pleadings (ECF No. 10) to the extent Plaintiff seeks remand pursuant to sentence four of 42 U.S.C.

---

[3] See Tr. at 23.

§ 405(g), **DENY** the Defendant's Motion for Judgment on the Pleadings (ECF No. 11), **REVERSE** the final decision of the Commissioner, and **REMAND** this case for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) and **DISMISS** this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Johnston and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Enter: July 7, 2016

Dwane L. Tinsley
United States Magistrate Judge